UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| TONYA L. CYPHERS, | ) |
| | ) |
|     Plaintiff | ) |
| v. | )    No. 1:13-cv-177-NT |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
|     Defendant | ) |

### REPORT AND RECOMMENDED DECISION[1]

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal raises the question of whether the administrative law judge supportably found the plaintiff capable of performing work existing in significant numbers in the national economy. The plaintiff seeks reversal and remand on the bases that the administrative law judge erred in (i) omitting to find that she needed to elevate her legs, (ii) rejecting in part mental limitations assessed by treating psychiatrist Jennifer Parent, M.D., and (iii) giving only limited weight to an opinion of treating primary care practitioner Jennifer Penney, F.N.P. *See* Plaintiff's Statement of Errors ("Statement of Errors") (ECF No. 13) at 4-13.[2] I find no reversible error and, accordingly, recommend that the court affirm the decision.

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), as amended January 1, 2013, which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me on March 14, 2014, pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

[2] The plaintiff also alleged, in her statement of errors, that the administrative law judge erred in failing to (i) find a severe impairment of migraine headaches and (ii) convey to the vocational expert present at her hearing an accurate picture of her mental and physical restrictions. *See* Statement of Errors at 13-16. At oral argument, her counsel stated that she no longer pressed the point regarding migraine headaches. I need not reach her point regarding the vocational testimony because it is contingent on the success of her other points.

1

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff met the insured status requirements of the Social Security Act through December 31, 2012, Finding 1, Record at 23; that she had severe impairments of a major depressive disorder *versus* bipolar disorder, rule-out personality disorder, generalized anxiety disorder, varicose veins, fibromyalgia *versus* chronic pain syndrome, and obesity, Finding 3, *id*. at 23-24; that she retained the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except that she could stand and walk for two hours and sit for six hours in an eight-hour workday, needed to alternate between sitting and standing for two to four minutes each hour without leaving the workstation, could never climb ladders but could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, had no manipulative limitations, needed to avoid even moderate exposure to temperature extremes, humidity, or wetness, could understand and remember simple instructions typical of unskilled work and sustain concentration, persistence, and pace for those tasks over an eight-hour workday and 40-hour workweek in a low stress environment, with low stress defined as work duties that did not require interaction with the general public, and in that environment could interact appropriately with coworkers and supervisors, tolerate work changes, travel, and avoid hazards, Finding 5, *id*. at 26-27; that, considering her age (34 years old, defined as a younger individual, on her alleged disability onset date, September 26, 2009), education (high school), work experience (transferability of job skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that she could perform, Findings 7-10, *id*. at 34; and that she, therefore, had not been under a disability from September 26, 2009, her alleged onset date of disability, through the date of the

decision, May 18, 2012, Finding 11, *id*. at 35. The Appeals Council declined to review the decision, *id*. at 1-4, making the decision the final determination of the commissioner, 20 C.F.R. §§ 404.981, 416.1481; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than her past relevant work. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the claimant's RFC to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## I. Discussion

### A. Omission of Need To Elevate Legs

The plaintiff first complains that the administrative law judge omitted to find that, as a result of swelling and pain caused by extensive varicosities of both legs, she would have to

elevate her legs as needed throughout a workday. *See* Statement of Errors at 4-6.[3] At oral argument, her counsel conceded that no treating provider or other medical source assessed such a restriction. However, he noted that the plaintiff had testified to such a need at her hearing and reported to a vascular clinic that she elevated her legs at night. *See* Record at 76-78, 684. He argued that the restriction was consistent with the finding of agency examining consultant Edward J. Harshman, M.D., that the plaintiff could "stand and walk for five [to] ten minutes (obese, knee arthritis, autonomic imbalance makes pain complaints credible)," *id*. at 769, and the finding of Ms. Penney that she would need unscheduled breaks, *see id*. at 1565.

Nonetheless, the fact remains that no medical source assessed a need for the plaintiff to elevate her legs. Instead, as the commissioner points out, *see* Defendant's Opposition to Plaintiff's Itemized Statement of Specific Errors ("Opposition") (ECF No. 17) at 4, treating sources prescribed compression stockings, *see* Record at 686, 1110-11, 1130, 1143. The medical records and the plaintiff's own statements indicate that, although the stockings helped with swelling, *see, e.g*., *id*. at 1110, she did not wear them consistently, *see, e.g., id*. at 349, 624, 672. In addition, after the plaintiff underwent a venous ablation procedure, she was told that she could discontinue use of the stockings, and her treating sources stated that there were no activity limitations. *See id*. at 1424.

There was no error in the administrative law judge's omission to find a need for the plaintiff to elevate her legs.

---

[3] The plaintiff notes that the administrative law judge failed even to address whether she had a need to elevate her legs. *See* Statement of Errors at 5. However, the administrative law judge implicitly addressed and rejected any such limitation when she noted that the record documented complaints of greater limitations from obesity, fibromyalgia *versus* chronic pain syndrome, and a history of varicose veins than set forth in her RFC determination, "but those complaints are not supported by the medical evidence of record, which largely does not show functional deficits." Record at 27.

## B. Handling of Parent Opinion

The plaintiff next complains that the administrative law judge failed to give appropriate weight to a mental RFC opinion of Dr. Parent when he rejected that portion of her opinion assessing marked restrictions in social functioning. *See* Statement of Errors at 6-11; Record at 1496. In her statement of errors, and through counsel at oral argument, she contended that those restrictions, which included an inability up to two-thirds of the day to accept instructions and respond appropriately to criticism from supervisors and get along with coworkers or peers, *see* Record at 1498, were well-supported by Dr. Parent's own notes, not inconsistent with other medical evidence of record, and consistent with her own subjective statements in function reports and in her testimony. She noted, for example, that Dr. Parent's notes, as well as those from a prior treating psychiatrist from the same practice, Margaret Jenner, D.O., which Dr. Parent reviewed, document bipolar disorder with recurrent major depressive episodes alternating with periods of high energy, extreme mood irritability, and spending sprees. *See* Statement of Errors at 7. At oral argument, her counsel noted that the focus of her psychiatric treatment was on the development of emotional regulation skills. *See* Record at 1488, 1490, 1492.

> The administrative law judge gave the Parent opinion "moderate weight[,]" explaining:
>
> Dr. Parent opined that the [plaintiff] had no restriction in activities of daily living, marked difficulties in maintaining social functioning, and moderate deficiencies of concentration, persistence, or pace. She opined that even a minimal increase in the [plaintiff's] mental demands or change in environment would cause the [plaintiff] to decompensate. She opined that the [plaintiff] would be unable to maintain a regular work schedule. She formed this opinion after treating the [plaintiff] for only four months. Further, her opinion is not entirely consistent with the evidence of record. Although the [plaintiff] has difficulties with social functioning in public places, she does have friends and has been able to establish relationships with her treating providers, showing that she does retain the ability to function socially. Additionally, there is nothing in the record to suggest that [she] could not maintain a regular work schedule. The record does not document numerous missed appointments, late arrivals, or cancellations. It is unclear what

5

> Dr. Parent based this aspect of her opinion on. The remainder of her opinion remains consistent with and supported by the evidence of record.

*Id*. at 33 (citation omitted). She gave an opinion of an agency examining consultant, Gary Rasmussen, Ph.D., "great weight[,]" explaining:

> He opined that the [plaintiff] could overcome her concentration and memory deficits with directed attention training as well as being presented material to be learned in a rote fashion across many trials, which would increase her ability to follow complex instructions. He noted that [she] possessed a range of well-developed social skills that would allow her to work well with supervisors, coworkers, and customers. He opined that she would be a reliable employee in terms of work productivity and attendance; he felt she would be able to maintain pace and persistence on the job. Dr. Rasmussen's opinion is consistent with the observations made of the [plaintiff] both during his evaluation and at office visits with treating providers, where she was not noted to express the severity of symptoms that she alleged. His opinion is consistent with her function reports, showing some decrease in function.

*Id.* at 33-34 (citation omitted).

As the commissioner noted in her brief, and through counsel at oral argument, the administrative law judge was not required to adopt all aspects of the Parent opinion. *See* Opposition at 7-8*; Hicks v. Astrue*, Civil No. 09-393-P-S, 2010 WL 2605671, at *4 (D. Me. June 23, 2010) (rec. dec., *aff'd* July 15, 2010) ("[T]he plaintiff characterizes the administrative law judge's choice of medical evidence on which to rely as 'cherry pick[ing],' but that is precisely the role of the administrative law judge. He need not adopt all of any particular provider's report, if he states his reasons for adopting only a portion of it.").

The administrative law judge generally discussed why she did not credit the full extent of the plaintiff's claimed mental restrictions; for example, that (i) the plaintiff endorsed going out with friends, *see* Record at 30, 1353, (ii) while, during an intake assessment in May 2011, she described extreme mood swings, worry, and anxiety attacks, her mental status examination was entirely within normal limits but for poor impulse control, *see id*. at 32, 1207, 1213-14,

6

(iii) mental status narratives showed, *inter alia*, relaxed manner and frequent use of humor, *see id*. at 32, 1232, and (iv) her mood continued to be irritable and depressed by report but was pleasant, calm, and cooperative at office visits, with intact memory and concentration, *see id*. at 32, 1349, 1354.

In addition, as the administrative law judge pointed out, *see id.* at 32-33, on examination, Dr. Rasmussen noted that the plaintiff had an even mood and flexible affect and displayed the demeanor of a social individual who appeared to cooperate, *see id*. at 749.

This was a sufficient explanation for the rejection of that portion of the Parent opinion finding marked restrictions in social functioning that included marked difficulty getting along with coworkers and supervisors. Nothing more was required.[4]

---

[4] The plaintiff made several subsidiary points in her statement of errors regarding the handling of the Parent opinion that her counsel did not mention at oral argument: that the administrative law judge (i) substituted her own lay opinion for that of a qualified psychiatric medical expert in deciding which of Dr. Parent's restrictions to adopt, in contravention of *Gordils v. Secretary of Health & Human Servs*., 921 F.2d 327, 329 (1st Cir. 1990), (ii) wrongly gave only moderate weight to the Parent opinion on the basis that it was "not entirely consistent" with the evidence, when Social Security Ruling 96-2p provides that a well-supported treating source medical opinion does not have to be consistent with all other evidence, (iii) erroneously accorded less weight to the Parent opinion on the basis that Dr. Parent had treated the plaintiff for only four months, although Dr. Parent had access to the treatment notes of her predecessor, Dr. Jenner, (iv) wrongly inferred from the plaintiff's ability to interact with treating sources that she retained the ability to function socially, ignoring her testimony indicating otherwise, and (v) erroneously stated that there was no evidence that she could not maintain a regular work schedule, ignoring her testimony indicating otherwise. *See* Statement of Errors at 8-11. Assuming the plaintiff still presses these points, they do not change the outcome of her appeal. *Gordils* stands for the proposition that, "since bare medical findings are unintelligible to a lay person in terms of residual functional capacity, the ALJ is not qualified to assess residual functional capacity based on a bare medical record." *Gordils*, 921 F.2d at 329. Here, the administrative law judge merely picked and chose among conflicting mental RFC expert opinions. She did not, herself, assess mental RFC based on a bare medical record. Nor did she wrongly reject the Parent opinion in part on the basis that it was not entirely consistent with the evidence. She detailed which portions she deemed consistent with the record and which she did not. *See* Record at 33. It was within her discretion to do so. *See, e.g., Hicks*, 2010 WL 2605671, at *4. The plaintiff cites no authority for the proposition that Dr. Parent's assumption of her care from another psychiatrist in the same practice lengthened the period of time that Dr. Parent should be deemed to have treated her. Finally, the administrative law judge supportably declined to fully credit the plaintiff's testimony regarding the extent of her mental health limitations, pointing to contradictory evidence such as the fact that she maintained friendships and that Dr. Rasmussen deemed her able to get along with supervisors and coworkers as well as to be a reliable worker in terms of productivity and attendance. *See* Record at 30, 33-34.

## C. Handling of Penney Opinion

Finally, the plaintiff contends that the administrative law judge erred in giving only "limited weight" to Ms. Penney's RFC opinion. *See* Statement of Errors at 11-13. Specifically, she faults the decision to disregard Ms. Penney's opinion that she would be unable to maintain a regular work schedule on the basis that there were not a significant number of cancellations, no-shows, or late arrivals of record. *See id*. at 12. She argues that an individual's ability to attend medical appointments is markedly different from her ability to work on a consistent basis. *See id*.

The commissioner acknowledges that ability to attend medical appointments, standing alone, would not contradict the Penney opinion. *See* Opposition at 12. However, she points out that the administrative law judge gave additional reasons for her handling of the opinion, including that (i) Ms. Penney, a nurse practitioner, was not a so-called "acceptable medical source," (ii) nothing in the record suggested that the plaintiff would be unable to sustain the demands of full-time work on a regular schedule, and (iii) the basis for Ms. Penney's opinion was unclear. *See id*.; Record at 31. She notes, in addition, that the administrative law judge elected to give greater weight to the physical RFC opinions of two other medical experts, agency examining consultant Dr. Harshman and agency nonexamining consultant J.H. Hall, M.D., than to that of Ms. Penney. *See* Statement of Errors at 12-13; Record at 31.

I find no error in the administrative law judge's handling of the Penney opinion. While evidence from "other sources" (those who are not acceptable medical sources) may not be used to establish the existence of a medically determinable impairment, such evidence is relevant to the question of the impact of a claimant's impairments on his or her ability to work. *See* 20 C.F.R. §§ 404.1513(a), (d), 416.913(a), (d). The case record should reflect consideration of such

opinions, and "the adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." Social Security Ruling 06-03p, reprinted in *West's Social Security Reporting Service* Rulings 1983–1991 (Supp. 2013), at 333.

The administrative law judge's discussion comports with these requirements, reflecting her consideration of the Penney opinion, her reasons for according it little weight, and her reasons for according the opinions of other medical experts greater weight. Beyond this, she considered several factors deemed relevant to the assessment of medical opinions, including the length of the treatment relationship, the consistency of the opinion with the record as a whole, and its supportability/level of explanation. *See* 20 C.F.R. §§ 404.1527(c), 416.1527(c).

## II. Conclusion

For the foregoing reasons, I recommend that the decision of the commissioner be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 28th day of April, 2014.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge